## Case No. 14,719.

### UNITED STATES v. CANTER et al.

[2 Bond, 389.] 1

Circuit Court, S. D. Ohio. Oct. Term, 1870.

ELECTIVE FRANCHISE — CONSTITUTIONAL AMENDMENT—NEGROES—INTERFERENCE WITH VOTERS.

1. The amendment to the constitution of the United States, securing to all persons born here all the rights of citizenship, is now in full force and valid as a part of the constitution, and includes the African race.

2. The right of suffrage is included in the guaranty of the constitutional amendment.

3. Section 4 of the act of congress of May 31, 1870 [16 Stat. 141], prohibits and punishes all interference in the exercise of the right of voting, by threats, intimidation, or violence, which hinders or prevents the free exercise of the right.

4. The acts and conduct of the defendant, Lewis Canter, as proved, are within the scope and operation of said section 4.

5. Individual views, adverse to the policy of the extension of the right of suffrage as provided for in the constitutional amendments, should have no influence with the jury, as the act of congress, under which the indictment is framed, is a valid act, passed in pursuance of the constitution, and obligatory upon every citizen.

At law.

Lewis H. Bond, for the United States.
Cassius K. Brenneman, for defendants.

LEAVITT, District Judge (charging jury). The defendants, Lewis Canter and Henry Canter, father and son, are jointly indicted for a violation of the act of congress of May 31, 1870 [supra], securing to all persons, entitled by law to the right of voting at elections, the peaceful and unobstructed exercise of that right. There are three counts in the indictment. The first charges that at the annual election held in Washington township, Lawrence county, Ohio, on October 11, 1870, the defendants, by threats, violence, and intimidation, hindered and prevented one Jacob Stuart from voting. The second count is similar to the first, with the exception that it is alleged said Stuart and one Jupiter Wilson were prevented from voting at said election by the same means averred in the first count. The third count charges an attempt to hinder

1 [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

and prevent the persons named from voting.

The indictment is framed under section 4 of the act of congress before referred to. which, in substance, provides that any person who, by bribery, threats, intimidation, or violence, shall hinder or prevent any qualified voter from the exercise of that right, shall be subject to punishment by fine or imprisonment. Several witnesses have been sworn, whose testimony in detail I shall not detain the jury by reciting. It is claimed that the evidence shows that Jacob Stuart and Jupiter Wilson both colored men of the African race, went to the place of voting at the election in Washington township, Lawrence county, Ohio, on October 11, 1870, for the purpose of voting for state and county officers, and also for a representative in congress for the district in which Washington township was situated; that there was a crowd about the place of voting, and as the two colored men approached the place, there were loud and violent words used to the effect that they would not be allowed to vote, and that the defendant, Lewis Canter, said to them they need not go to the polls, for no colored man should vote; that he would die first, and would cut the heart out of any one who would protect them. And that intimidated by the violence and threats used, the colored men were prevented from voting, and retired peaceably from the place. There can be no doubt that, if such is the evidence before you, it brings the defendant, Lewis Canter, within the scope and terms of the act of congress referred to. If his conduct, and the words used by him, did intimidate the colored men, and hindered and prevented them from voting, it was the precise result which it was the intent of the law to prevent. As to the defendant, Henry Canter, the son, though in company with his father, there is no evidence implicating him in the use of any words, or as guilty of any act subjecting him to the penalty of the law; and as to him it will be the duty of the jury to return a verdict of not guilty.

In committing this case to the jury, I have only to remark that the act of congress of May, 1870, under which this indictment is framed, was enacted to carry into effect a recent amendment of the constitution of the United States, guarantying to all native-born male persons the full rights of citizenship, irrespective of race, color, or previous condition. This implies obviously the right of suffrage and includes clearly the African race, though not specially named in the constitutional amendment referred to. To secure to all persons their rights under the amendment, the legislation of congress was expedient and necessary; and that body had an undoubted right to pass the act of May 31, 1870. The clause on which this indictment is based, in the most explicit terms, prohibits and punishes all interference with the exercise of the right of voting by all persons entitled to that right, which in its ef-

fect hinders or prevents its free and unobstructed enjoyment. The persons named in the indictment as having been prevented from voting through the violence and threats of one of the defendants, though colored persons, had an undoubted right to vote at the election referred to; and if the jury find from the evidence that they were hindered or prevented from voting by the defendant and by the means averred in the indictment, they will have no hesitancy in returning a verdict against him.

I will here take occasion to remark that whatever may be our individual views as to the policy and expediency of the extension of the right of suffrage resulting from the constitutional amendment adverted to, it is now a part of the constitution, and all laws passed in pursuance of it are obligatory upon every citizen. It must be admitted that the guaranty of the right of citizenship to all not disfranchised by crime, is in strict accordance with the great principles which underlie our free republican government. And there is good reason to hope that the experiment will work auspiciously to the promotion of the stability and success of our free institutions. If there is a race among us, who, from the adverse circumstances with which, without their fault, they have been heretofore surrounded, may not be now fitted for the enlightened exercise of all the rights of citizenship, there are good reasons for the hope that the bestowment of these rights will stimulate them to such efforts in the acquirement of knowledge and intelligence, as will result in their moral and intellectual elevation, and qualify them fully for the right discharge of all their duties and obligations as free and independent members and citizens of our country.

The jury returned a verdict of not guilty as to Henry Canter, and guilty as to Lewis Canter; and the latter was sentenced to six months' imprisonment in the jail of Lawrence county.